# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BI-STATE INSULATION, INC., <br> Plaintiff, <br><br> vs. <br><br> GEILER CO., Inc., et al., <br> Defendants. | Case No. 1:19-cv-40 <br> Dlott, J. <br> Litkovitz, M.J. <br><br> REPORT AND <br> RECOMMENDATION |

Plaintiff Bi-State Insulation, Inc. ("Bi-State") brings this action alleging claims of breach of contract and account against defendant Geiler Company, Inc. ("Geiler") in relation to its performance of three subcontracting jobs at the Veteran's Administration Medical Center ("VA") in Cincinnati, Ohio.[1] This matter is before the Court on defendant's motion to stay litigation and to compel arbitration (Doc. 12), plaintiff's response in opposition (Doc. 13), and defendant's reply memorandum (Doc. 14).

## I. Factual Background

Bi-State executed three subcontract agreements with Geiler to perform three separate projects at the Cincinnati VA: the Steam Heat project, the Inpatient Bed Tower project, and the Animal Research Facility project. (Complaint, Doc. 1 at ¶¶ 8, 11, 21, 29). Plaintiff attaches these three subcontracts to the complaint. (Doc. 1-3 ("Steam Heat project"); Doc. 1-9 ("Inpatient Bed Tower project"); Doc. 1-11 ("Animal Research project")). The Steam Heat project was awarded to Geiler on May 7, 2014, and Geiler subcontracted with Bi-State to provide HVAC insulation on August 5, 2014. (Complaint, Doc. 1 at ¶¶ 11-12; Doc. 1-3). The Inpatient Bed Tower project was awarded to Geiler on July 17, 2014, and Geiler subcontracted with Bi-State to

---

[1] Plaintiff voluntarily dismissed with prejudice all claims against defendant Capital Specialty Insurance Co, which included its Count III claim under the Miller Act, 40 USC § 3133. (Doc. 10). Therefore, the only remaining claims in this case are plaintiff's Count I breach of contract claim and Count II account claim against defendant Geiler, Co.

provide HVAC insulation on November 23, 2015. (Complaint, Doc. 1 at ¶¶ 21-23; Doc. 1-9). The Animal Research Facility project was awarded to Geiler in October 2012, and Geiler subcontracted with Bi-State to provide insulation for "Domestic Cold, Hot and Hot Water return and Horizontal Roof drains" on September 22, 2015.[2] (Complaint, Doc. 1 at ¶¶ 29-30; Doc. 1-11).

The parties' relationship was governed by the terms of a standard form of agreement between contractor and subcontractor ("the master agreement"). (Complaint, Doc. 1 at ¶ 9; Doc. 1-1). The Animal Research project subcontract, signed by a manager on behalf of Bi-State, provides that "[t]he terms and conditions of this Project Subcontract Agreement shall include all terms established in the Master Agreement. . . ." (Doc. 1-11). The Steam Heat project and Inpatient Bed Tower project subcontracts, also signed by a manager on behalf of Bi-State, provide that "[t]he terms and conditions of this Project Subcontract Agreement shall include all terms established in the Master Standard Form of Agreement. . . ." (Doc. 1-3; Doc. 1-9). The master agreement, attached as exhibit A to plaintiff's complaint, provides, in relevant part:

**ARTICLE 6 MEDIATION AND ARBITRATION**

**6.1 MEDIATION**

6.1.1 Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

\*

\*

\*

---

[2] There is some ambiguity as to this date. The subcontract agreement states that the agreement was entered into on June 1, 2005. (Doc. 1-11).

**6.2 ARBITRATION**

**6.2.1** Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. The parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.

(Doc. 1-1 at 9-10).

Plaintiff alleges that it has performed all of its obligations under its subcontracts with Geiler and that Geiler breached these agreements by failing to pay plaintiff in full for the work it performed under the agreements. (Complaint, Doc. 1 at ¶¶ 37-38). Plaintiff initially filed suit in state court on two of the subcontracts. (Doc. 13 at 2). That case was subsequently dismissed, and this federal court action was filed.

**II. The Parties' Arguments**

Defendant moves to compel arbitration because plaintiff executed the three subcontract agreements with Geiler, all of which incorporate by reference the master agreement providing that any claims arising out of or related to the subcontract agreements shall be subject to arbitration. (Doc. 12 at 1). Defendant argues that because plaintiff's claims arise directly from the work it performed for Geiler as a subcontractor pursuant to the express terms of the subcontractor agreements and the master agreement, the claims therefore fall within the scope of the arbitration agreement. (*Id.* at 5).

Plaintiff opposes defendant's motion to compel arbitration, arguing there was no record of a master agreement at the time the subcontracts were signed and therefore there was no mutual assent to its terms. (Doc. 13 at 3-4). Plaintiff argues that it "does not know if a master agreement from before the signed subcontracts exist[s]." (*Id.* at 4). Plaintiff states that the only master agreement in its possession is the "unsigned one attached to its complaint" that post-dates the execution of the subcontracts. (*Id.*). Plaintiff states that defendant mailed it the master

3

agreement after the subcontracts at issue were signed. (*Id.*). Plaintiff contends that "[d]efendant must show a valid signed copy of a Master agreement from before each sub contract [sic] was signed." (*Id.*). Plaintiff further contends that even if the arbitration agreements are enforceable, defendant waived any right to arbitrate by failing to exercise that right in the state court litigation and by failing to mediate under Article 6.1 of the master agreement. (*Id.* at 5-6). Plaintiff argues that if the master agreement is valid, the Court must order mediation as a condition precedent to arbitration pursuant to the terms of the master agreement. (*Id.*).

In reply, defendant maintains that plaintiff attached the master agreement to the complaint and also admitted in that complaint that "Plaintiff and Geiler's relationship was governed by the terms of [the Master Agreement]." (Doc. 14 at 1) (citing Complaint, Doc. 1 at ¶ 9). Defendant contends that this is a "binding judicial admission that Plaintiff agreed with Geiler to arbitrate all claims." (*Id.* at 2). Defendant maintains that the lack of signature on the master agreement is "of no consequence." (*Id.*). Defendant further contends that it has not waived its right to arbitration because it never took any actions completely inconsistent with any reliance on the arbitration agreement and never delayed asserting its right to arbitration such that plaintiff suffered any prejudice. (*Id.* at 3) (citing factors from *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)). Defendant argues that plaintiff cites no legal authority in support of its argument that Geiler waived its right to arbitration by not agreeing to mediation. (*Id.* at 4).

### III. Resolution

The Federal Arbitration Act ("FAA") allows for a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

4

(1983) (citing 9 U.S.C. § 2). *See also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).[3] The goal of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Volt Info Scis., Inc v. Bd. Of Tr. Of Leland Stanford , Jr. Univ.*, 489 U.S. 468, 479 (1989). The Supreme Court has emphasized that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621 (emphasis in original) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)).

In considering a motion to compel arbitration, courts should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)). In order to defeat a motion to compel arbitration, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

As the Sixth Circuit has explained:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. "[T]here

---

[3] Defendant states that the master agreement is silent as to whether the FAA or Ohio's analogous Arbitration Act, Ohio Rev. Code § 2711.02, applies. (Doc. 12 at 3 n.2). Defendant argues that the "analysis and result would be the same" because "Ohio courts recognize that public policy favors arbitration and the enforcement of agreements to arbitrate." (*Id.*) (collecting Ohio state law cases).

5

is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*H.H. Franchising Sys., Inc. v. Pawson*, No. 1:17-cv-368, 2018 WL 1456131, at *3 (S.D. Ohio Mar. 23, 2018) (Dlott, J) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)). In determining the enforceability of an arbitration agreement, courts apply state law of contract formation. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). Under Ohio law, the elements of a valid contract include an offer, acceptance, mutual assent, and consideration. *Kostenik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

### A. Whether the master agreement governing arbitration is valid.

The Court must first determine whether a valid arbitration agreement exists between the parties. Plaintiff contends there is no valid arbitration agreement between the parties because there is no signed master agreement evidencing an agreement to arbitrate, and the master agreement attached to the complaint post-dates the execution of the subcontracts.

Under Ohio law, which governs the parties' agreement in this case, "separate agreements may be incorporated by reference into a signed contract." *Mohmed v. Certified Oil Corp.*, 37 N.E.3d 814, 821 (Ohio Ct. App. 2015). The Sixth Circuit has likewise recognized incorporation by reference as a theory for binding parties to an arbitration agreement. *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984) (holding that plaintiff was subject to arbitration even though it was not a signatory to the primary construction contract because the performance bond executed by plaintiff incorporated by reference the terms of the underlying subcontract, which, in turn, incorporated by reference the terms of the primary construction contract and the obligation to submit all unresolved disputes to arbitration). *See also Javitch*, 315 F.3d at 629 (listing five conditions, including incorporation by reference, that can bind a non-signatory to

arbitration) (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *Capitol Indem. Corp. v. Dayton Bd. of Educ.*, 492 F. Supp. 2d 829, 835 (S.D. Ohio 2006) (same).

In this case, the three subcontracts attached to the complaint explicitly incorporate by reference the terms of the master agreement. (*See* Doc. 1-11, Animal Research project, "[t]he terms and conditions of this Project Subcontract Agreement shall include all terms established in the Master Agreement. . . ."; Docs. 1-3 and 1-9, Steam Heat and Inpatient Bed Tower projects, "The terms and conditions of this Project Subcontract Agreement shall include all terms established in the Master Standard Form of Agreement Between Contractor and Subcontractor."). Regardless of the lack of signature, plaintiff is still bound by the terms of the master agreement because the three subcontracts expressly incorporate by reference the master agreement. *Mohmed*, 37 N.E.3d at 821 ("regardless of a lack of signature on a separate document, a party was bound to the terms contained in the document where the document was expressly incorporated by reference") (citing *Garcia v. Wayne Homes*, No. 2001 CA 53, 2002 WL 628619, at *9 (Ohio Ct. App. Apr. 19, 2002)). Given the express reference to the terms of the master agreement in the subcontracts, plaintiff had a duty to inquire about the master agreement before entering into the subcontracts. *Id.* By signing the subcontracts, which explicitly incorporate by reference the terms of the master agreement, plaintiff expressed its assent to the arbitration provision set forth in the master agreement. *See Great Am. Ins. Co.*, 2018 WL 6003968, at *3 ("The Sixth Circuit applies 'the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.'") (quoting *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960)).

Plaintiff alleges that it "does not know" if the master agreement was in existence at the

time that Bi-State signed the three subcontract agreements. (Doc. 13 at 4). However, on a motion to compel arbitration, plaintiff as the nonmovant bears the burden of showing a genuine dispute of fact as to the validity of the agreement to arbitrate. *See Fox v. TransUnion, LLC*, No. 1:17-cv-362, 2018 WL 5313453, at *2 (S.D. Ohio. Oct. 26, 2018). Plaintiff's allegation casting doubt on the existence of that agreement, without more, is insufficient to raise a genuine issue of material fact as to the enforceability of the arbitration agreement. *Id. See also Danley*, 680 F. App'x at 397. In addition, the record before the Court undercuts plaintiff's argument. "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 225 F. Supp. 3d 670, 676 (S.D. Ohio 2016) (quoting *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986)). Plaintiff's complaint alleges that its relationship with defendant was "governed by the terms of a Standard Form of Agreement between Contractor and Subcontractor (hereinafter 'master contract')," a copy of which plaintiff attached to the complaint. (Complaint, Doc. 1 at ¶ 9; Doc. 1-1). Plaintiff's factual assertion in the complaint, which has not been amended, is binding on plaintiff. *Kimber Baldwin Designs, LLC*, 225 F. Supp. 3d at 677.

Plaintiff's argument that the master agreement is unenforceable because it was never signed is also unavailing. Consistent with the FAA, Sixth Circuit precedent, and Ohio law, arbitration agreements need only be written and not necessarily signed as long as there is action signaling mutual assent between the parties. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007); *Brumm v. McDonald & Co. Sec.*, 603 N.E.2d 1141, 1145 (Ohio Ct. App. 1992). *See also Worldwide Asset Purchasing, L.L.C. v. Easterling*, 928 N.E.2d 1148, 1151-52 (Ohio Ct. App. 2009) (noting that "unsigned agreements are not automatically sufficient to compel arbitration without some proof that a party agreed to arbitration"); *Crowe v. BE & K,*

*Inc.*, No. 2:09-cv-873, 2010 WL 1640884, at *4 (S.D. Ohio Apr. 22, 2010) (holding that "the conduct of the parties prior to this dispute demonstrates that both intended to be bound [by the arbitration agreement]" even though all parties did not sign the agreement); *Braxton v. O'Charley's Rest. Properties, LLC*, 1 F. Supp. 3d 722, 726 (W.D. Ky. 2014) (holding that plaintiffs manifested their assent to an arbitration agreement even though it was unsigned because the plaintiffs were "informed of the arbitration agreement, were allowed an opportunity to review it, and were informed that they must agree to its terms as a condition. . . ."). *Cf. Eberhard v. Chicago Title Ins. Co.*, No. 1:11-cv-834, 2012 WL 13029534, at *10 (N.D. Ohio Mar. 31, 2012) (distinguishing other cases holding that unsigned arbitration agreements are enforceable because the plaintiffs in *Eberhard* had never received a copy of the arbitration agreement). As explained above, plaintiff's own pleading admissions and actions in signing the subcontracts, which expressly incorporates by reference the arbitration provision of the master agreement, establish plaintiff's assent to the terms of the master agreement governing arbitration, despite the omission of a signature on the master agreement. *Seawright*, 507 F.3d at 974.

Accordingly, because the three subcontracts incorporate by reference the master agreement and plaintiff admits that the master agreement governs the relationship between the parties, the Court concludes that the master agreement mandating arbitration is enforceable.

### B. Whether plaintiff's claims fall within the scope of the arbitration agreement.

Under the FAA, any doubts as to the scope of arbitration should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation

9

omitted). Courts determine if a dispute is within the scope of an arbitration clause by asking "if an action could be maintained without reference to the contract or relationship at issue." *Highland Wellmont Health Network v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003) (quoting *Fazio v. Lehman Bros, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

Here, the Court finds that plaintiff's claims against Geiler could not be maintained without reference to the subcontract agreements and master agreement. Plaintiff brings claims against Geiler for breach of contract, alleging that it performed its obligations under the three subcontract agreements and that Geiler "failed and refuses to pay Plaintiff in full for labor, services, and materials furnished in the prosecution of the work provided for in the contracts between the parties." (Doc. 1, Complaint at ¶¶ 37-38). Plaintiff also brings a Count II account claim, alleging that Geiler owes plaintiff $100,273.50 on its account for failing to pay plaintiff for the work performed on the subcontracting projects. (*Id.* at ¶ 41). The arbitration clause of the master agreement provides that "[a]ny claim arising out of or related to this Subcontract, shall be subject to arbitration." (Doc. 1-1 at 10). Plaintiff's claims for breach of contract and account directly arise from a dispute surrounding the services plaintiff rendered under the three subcontract agreements and an alleged breach resulting therefrom. Therefore, plaintiff's claims fall within the scope of the master agreement mandating arbitration.

### C. Defendant has not waived its right to arbitration and the Court is not authorized to compel mediation.

Plaintiff argues that if the master agreement is enforceable, defendant has waived its right to arbitration because it has failed to engage in mediation as a condition precedent to arbitration as required by the master agreement. (Doc. 13 at 5). Plaintiff argues that the Court must first order the parties to mediate before compelling arbitration. (*Id.* at 6).

"[T]here is a strong presumption in favor of arbitration, and . . . waiver of the right to arbitration is not to be lightly inferred." *O.J. Distrib., Inc.*, 340 F.3d at 355 (internal quotation omitted). Waiver of the right to arbitration occurs where a party (1) takes actions that are completely inconsistent with any reliance on the arbitration agreement, and (2) delays the assertion to such an extent that the opposing party suffers actual prejudice. *Id* at 356. The Court concludes that defendant's failure to initiate mediation during or after the state court proceedings does not amount to a waiver of its right to arbitrate. Plaintiff has not provided, and the Court has not found, support for the legal proposition that a party waives its right to arbitration by failing to engage in a condition precedent to arbitration such as mediation. In addition, defendant's actions were not "completely inconsistent" with its reliance on the arbitration agreement. Defendant promptly moved to compel arbitration one month after plaintiff initiated its lawsuit in federal court upon voluntarily dismissing its state court action. (Doc. 13 at 2; Doc. 14 at 3). Finally, plaintiff has not alleged that it suffered any actual prejudice.

In addition, the Court is not authorized to compel mediation as a condition precedent to arbitration. Though not cited by the parties, "the Supreme Court has held that an arbitrator, rather than a court, must decide whether conditions precedent to arbitration have been met." *Great Am. Ins., Co.*, 2018 WL 6003968, at *5 (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1963)). *See also Brady and Horne Co, Inc. v. Haskell Co.*, No. 08-2885, 2009 WL 10698661, at *3-4 (W.D. Tenn. July 8, 2009) (finding that the question of whether arbitration was premature because a contract required a "settlement meeting" as a precondition to arbitration was a question for the arbitrator and not the court). Accordingly, it is the arbitrator's job to decide whether the parties must

11

mediate as a condition precedent to arbitration in accordance with the terms of the master agreement.

Therefore, defendant's motion to compel arbitration should be **GRANTED**.

**D. Whether this matter should be stayed or dismissed.**

The Court must next determine if this matter should be stayed pending arbitration proceedings or be dismissed. The FAA requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3 (emphasis added). However, dismissal, rather than a stay of proceedings, is proper where all remaining claims are arbitrable. *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 797 (S.D. Ohio 2019) (citing *Hensel v. Cargill, Inc.*, 1999 WL 993775, (6th Cir. Oct. 19, 1999) (table)). *See also Braxton*, 1 F. Supp. 3d at 728-29 (the Sixth Circuit follows the approach that a court may dismiss the action if all the claims in the suit will be referred to arbitration); *Napier v. W. Chester Hosp., LLC*, No. 1:18-cv-00234, 2019 WL 1317859, at *2 (S.D. Ohio Mar. 22, 2019) (Barrett, J) ("The Court is within its discretion to dismiss a case where all claims are subject to arbitration.") (citing *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)); *Belmont Med. Care, LLC v. Cmty. Ins. Co.*, No. 2:18-cv-968, 2019 WL 1676003, at *6 (S.D. Ohio Apr. 17, 2019) (same). Here, because the Court has determined that the master agreement governing arbitration between the parties is enforceable and plaintiff has neither disputed the arbitrability of its claims or argued that there is an outlying claim that is not subject to arbitration, the Court concludes that dismissal without prejudice, rather than a stay of proceedings pending the conclusion of arbitration, is appropriate. *See Napier*, 2019 WL 1317859, at *3.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that defendant's motion to compel arbitration (Doc. 12) be **GRANTED** and this case be **DISMISSED** without prejudice from the docket of this Court.

Date: 6/17/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BI-STATE INSULATION, INC.,
Plaintiff,

Case No. 1:19-cv-40
Dlott, J.
Litkovitz, M.J.

vs.

GEILER CO., INC., et al.,
Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).